MHN

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MEMORYLINK CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.   ) | No. 09 C 7401 |
| ) | |
| MOTOROLA, INC., JONATHAN P. MEYER, ) | The Honorable William J. Hibbler |
| HUGH C. DUNLOP, THOMAS G. BERRY, ) | |
| J. RAY WOOD, and TERRI S. HUGHES ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This case comes before the Court following its reassignment and consolidation with another substantially related case in which the Court has already ruled on various motions. *See, e.g., Memorylink Corp. v. Motorola*, 08 C 3301, 2009 WL 464338 (N.D. Ill. Feb. 23, 2009), *reversed in part on reconsideration*, 2009 WL 3366974 (N.D. Ill. Oct. 15, 2009). In the case originally before the Court (the "2008 case"), Plaintiff Memorylink Corporation accused Defendant Motorola, Inc. of engaging in deceptive conduct, sometimes under the guise of an attorney-client relationship, in order to rob it of its intellectual property through the filing and prosecution of various patents and patent applications. In the instant case (the "2009 case"), Memorylink accuses Motorola and the remaining defendants, Motorola's current and former in-house attorneys, of committing legal malpractice when they stole the very same intellectual property through the same, or a closely related, course of deceptive conduct. In the 2008 case, the Court granted Motorola's motion to dismiss in part and denied it in part. *Id.* Defendants now move to dismiss Memorylink's malpractice claims as well. For a related, but somewhat different set of reasons discussed below, the Court GRANTS that motion.

## BACKGROUND

In 1996, Peter Strandwitz and Robert Kniskern developed technology that enabled the wireless transmission of real time video. About a year later, Strandwitz approached Motorola to explore the possibility of entering into a business relationship. Strandwitz believed that combining his video compression technology with Motorola's radio transmission technology would result in a lucrative business partnership; Motorola agreed. On January 13, 1998, the parties signed a Memorandum of Understanding outlining the terms of their relationship. Then, in February 1998, Memorylink – in "anticipation of filing one or more patent applications" – drafted a document entitled the "Wireless Multimedia Core Technology Overview" that described the goals of the parties regarding their working relationship. Over the next few months, Memorylink demonstrated several applications of its new technology. For example, on February 25, 1998, Memorylink modified two Sharp video camcorders so that one camera wirelessly transmitted real-time video footage that was displayed by the other camera. Memorylink accomplished this by equipping the camcorders with its video compression technology, which allowed the camcorders to use Motorola's radio technology to transmit the images. The demonstration convinced Motorola that synergies existed between Motorola and Memorylink and the parties decided to work on a patent application.

Strandwitz and Kniskern had very little patent experience, so when Motorola suggested that its legal department should handle the patent application, they readily agreed. On April 13, 1998, Hugh Dunlop, a Motorola senior patent manger, sent a letter to Strandwitz stating that Motorola had reviewed the Technology Overview in order to identify a "basis for patent applications that might be filed as a result of the design effort between Motorola and Memorylink." Dunlop suggested the parties file a "joint patent application" and included a

Patent Filing Agreement for Memorylink to review. Dunlop also stated that it was his understanding that Memorylink worked with Gary Schulz and Jan Wyckoff – two Motorola engineers – to develop the invention underlying the prospective patent:

> It is my understanding from Gary Schulz and Jan Wyckoff that the inventors for these ideas are yourself, Gary, Jan, and Bob Kniskern. Please let me know if you or Bob disagree with this determination of inventorship.

Memorylink did not object to Dunlop's characterization of the inventorship. Strandwitz and Kniskern later signed an invention disclosure form listing themselves, Schulz and Wyckoff as joint inventors of the soon-to-be patented invention. In June 1998, Kniskern, Strandwitz, Wyckoff, Schulz executed an Assignment, thereby transferring their rights in the prospective invention and any resulting patents to the Memorylink and Motorola, who would hold those rights "jointly and equally." On June 22, 1998, Motorola's in-house lawyers finished their preparation of the patent application and filed it with the United States Patent Office (USPTO). The application was granted on February 18, 2003, as U.S. Patent No. 6,522,352 (the '352 Patent).

Two days after Motorola filed the '352 Patent application, it filed a second patent application titled "Self-Contained Camera Invention and Method for Capturing and Communicating Images via am Modem." Despite the fact that the application depicted two camcorders bearing "unmistakable similarities" to those Memorylink developed to demonstrate their technology, Motorola listed Schulz and Wyckoff as the sole inventors on the application. The application was granted on June 3, 2003, as U.S. Patent No. 6,573,938 (the '938 Patent). Memorylink contends it was unaware of the application or resulting patent until November 29, 2007.

In the 2009 complaint, Memorylink claims that: (1) it entered into an attorney-client relationship with Defendants in 1998; (2) Defendants committed malpractice when they advised Strandwitz, Kniskern, and Memorylink that they should share inventorship on the '352 Patent with Wyckoff and Schulz and share ownership of the patent rights with Motorola; and (3) Defendants committed malpractice when they successfully applied for and prosecuted the '938 Patent without notifying Memorylink.

## *DISCUSSION*

### I. Standard of review

Motions to dismiss test the sufficiency, not the merits, of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a motion to dismiss under federal notice pleading, a plaintiff must "provide the grounds of his entitlement to relief" by alleging "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) (internal quotation marks, brackets, and citation omitted). Specific facts are not necessary. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007). The Court treats well-pleaded allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Disability Rights Wisc., Inc. v. Walworth County Bd. Of Supervisors*, 522 F.3d 796, 799 (7th Cir. 2008).

### II. Analysis

Defendants make a variety of arguments in support of their motion to dismiss in this case, but focus primarily on the claim that Memorylink's claims are barred by the relevant statutes of limitations and repose. The Court limits its discussion to those primary arguments because they are meritorious.

### A. The '352 Patent

In Illinois, legal malpractice claims are subject to both a two-year statute of limitations and a six-year statute of repose. 735 ILCS §§ 5/13-214.3(b)-(c). Memorylink's instant claims of injury regarding the '352 Patent are based on the same facts giving rise to its fraud claims in the 2008 case. The Court dismissed those claims based on a five-year statute of limitations, despite Memorylink's arguments that it did not discover its injury until 2007. *Memorylink*, 2009 WL 464338, *5-*6. The Court rejected Memorylink's contention that, due to the complex nature of patent law and its application to the concepts of inventorship and assignments, it was duped into believing that Motorola and its engineers had to be given credit for Memorylink's inventions. *Id.* The Court noted that "Memorylink's dogged insistence that Motorola's engineers contributed nothing to the patent" undermined their claims of confusion and deception. *Id.*

Then, on reconsideration, the Court similarly rejected Memorylink's arguments that Motorola's role as legal counsel to Memorylink delayed Memorylink's ability to discover its injury because they were simply deferring to the advice of counsel. *Memorylink*, 2009 WL 3366974, *5. The Court noted that Memorylink's complaint did not support that claim because, while the complaint might be read to allege the existence of an attorney-client relationship between the companies, Memorylink's decision to establish that relationship post-dated its acknowledgement that Motorola's engineers were joint inventors. *Id.* Essentially, the Court held that Memorylink pleaded itself out of court by alleging that it appointed Motorola's attorneys to prosecute the patent subsequent to its discovery of the injurious facts.

Thus, after giving Memorylink two opportunities to brief the issue of how the statute of limitations applied to its claims, the Court denied Memorylink's arguments. After the Court so ruled, Memorylink amended its complaint twice, but never sought to clear up any mistakes in its

5

pleadings that might have caused the Court to deny its arguments regarding the application of the statute of limitations. Instead, Memorylink filed an entirely new complaint based upon almost identical facts. Then, when Motorola sought to reassign the 2009 case based on its similarity to the 2008 case, Memorylink opposed that motion. The Court cannot be sure of Memorylink's motivation in taking this course of action, but if it was an attempt to avoid the law of the case, it failed. Memorylink now asks that the Court read its 2009 complaint to support a finding that an attorney-client relationship existed earlier than the date on which Memorylink learned of its alleged injury. To do so, the Court would have to violate the law of the case doctrine by making a ruling that conflicts directly with one it made previously. *Moriarty v. Svec*, 429 F.3d 710, 722-23 (7th Cir. 2005). The Court declines that request and grants Defendants' motion to dismiss Memorylink's malpractice claims regarding the '352 Patent.

### B. The '938 Patent

Upon reconsideration of Motorola's motion to dismiss the 2008 case, the Court found that Memorylink might be able to succeed on an argument that, at least with regard to its claims concerning the '938 Patent, the Court should toll the relevant statute of limitations based on the discovery rule. The Court noted that Federal Circuit case law ruled out the possibility that Memorylink was put on constructive notice of its claims as soon as the '938 Patent issued. *Memorylink*, 2009 WL 3366974, *5 (citing *Advanced Cardiovascular Sys., Inc. v. Seimed Life Sys., Inc.*, 988 F.2d 1157, 1161-62 (Fed. Cir. 1993)). The Court ruled that the statute of limitations actually began to run when Memorylink had a duty to inquire into whether Motorola was filing an application for the '938 Patent, but found that it could not determine that date on the basis of the pleadings alone. *Id.*

In this case, however, Defendants argue that more than six years passed between the alleged acts or omissions causing Memorylink's injury and the filing of the 2009 case. Thus, Defendants contend, the statute of repose bars Memorylink's claims. If that is true, Memorylink's lack of notice is irrelevant because the discovery rule does not apply to the statute of repose. *Preferred Personnel Servs., Inc. v. Meltzer, Purtill & Stelle, LLC*, 387 Ill. App. 3d 933, 940, 902 N.E.2d 146, 152 (2009). Thus, the Court must initially determine when Defendants engaged in the final alleged "act or omission."

Memorylink first argues that, under the doctrine of continuous representation, Defendants' acts or omissions necessarily extended until the cessation of the parties' attorney-client relationship. However, Illinois courts have rejected the doctrine of continuous representation. *Witt v. Jones & Jones Law Offices, P.C.*, 269 Ill. App. 3d 540, 544, 646 N.E.2d 23, 25-26 (Ill. App. Ct. 1995) (citing *Cunningham v. Huffman*, 154 Ill. 2d 398, 404, 609 N.E.2d 321, 324 (1993) for rejection of the doctrine in the context of medical malpractice). Thus, Memorylink must actually plead that Defendants engaged in injurious acts or omissions after November 25, 2003 (six years prior to filing) to avoid the effect of the statute of repose.

Memorylink next argues that even without a *per se* rule that Defendants' acts or omissions continued throughout the duration of the attorney-client relationship, that is the case here because Defendants, as counsel, had a continuing duty to advise Memorylink about the '938 Patent. This argument is without merit under Illinois law for a number of reasons. First of all, Memorylink bases its argument on the notion that even if the doctrine of continuous representation does not apply in Illinois, a plaintiff may still sue under the theory that a defendant engaged in a continuous course of *negligent* representation. However, while Illinois courts have applied that theory in medical malpractice cases, *see Cunningham*, 154 Ill.2d at 405,

7

609 N.E.2d at 325, its application is at least questionable in the context of legal malpractice, *see Mauer v. Rubin*, 926 N.E.2d 947, 956 (Ill. App. Ct. 2010) (noting that unlike the statute of repose for medical malpractice, the statute of repose for legal malpractice refers only to negligent "act[s] or omission[s]" and omits the crucial reference to "occurrence[s]," but avoiding unnecessary resolution of the theory's applicability).

Moreover, even if the theory is applicable in this context, Memorylink does not allege a continuous course of negligent conduct. Defendants may have injured Memorylink by prosecuting a patent application without advising Memorylink. However, Defendants did not engage in any "cumulative" conduct after that date which compounded Memorylink's injury. *Cf. Cunningham*, 154 Ill.2d at 405, 609 N.E.2d at 325. As the *Mauer* court noted:

> A continuing violation or tort is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation. Thus, where there is a single overt act from which subsequent damages may flow, the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the injury.

926 N.E.2d at 957 (quoting *Feltmeier v. Feltmeier*, 207 Ill.2d 263, 278-79, 798 N.E.2d 75, 85 (2003)) (bracketed material omitted). In other words, Defendants' failure to ever notify Memorylink of the patent after its issuance "did not exacerbate [Memorylink's] injury in the same way that, for instance, repeated administration of the wrong medicine can exacerbate a patient's ill health with each treatment." *Id.* (distinguishing *Cunningham*).

Finally, even if Memorylink does allege a continuous course of negligent legal representation, that legal representation also ended at least by the time the patent issued. Memorylink avers that its attorney-client relationship with Defendants continues to this day, and thus that the statutes of repose and limitations have not yet started running. In support of that

contention, Memorylink points to its early communications with Defendants, a Power of Attorney that Memorylink signed, and Defendants' continued interaction with the USPTO.

However, even assuming that the Power of Attorney and Defendants' payment of maintenance fees and the like to the USPTO are enough to indicate an attorney-client relationship (an assumption Defendants vigorously dispute), these indicia are explicitly limited to the '352 Patent. The only allegations that provide any support for the idea that Memorylink appointed Defendants as counsel for any additional patents that might arise from their inventions are limited to the discussions the parties had regarding their relationship in the late 1990s. Not only would a finding that the parties established an attorney-client relationship at that point possibly conflict with the Court's earlier rulings as discussed above, but the allegations are not sufficient to establish a duty on the part of the Defendants that continues beyond November 25, 2003. By that point, by Memorylink's own admission, three important events had occurred. First, Memorylink appointed different counsel to handle these affairs. Second, Motorola told Memorylink that it was no longer interested in working with Memorylink. Third, the '938 Patent issued and was publicly available. Considering those facts, Memorylink is in essence requesting that the Court find that its attorney-client relationship with Defendants, if ever there was one, continues *ad infinitum*. To do so would be to ignore the existence of and purpose of the statute of repose.

Memorylink attempts to argue that the statute of repose should nonetheless be tolled under either the fraudulent concealment statute or the doctrine of equitable estoppel. The two exceptions are related and "the principles behind the two are substantively the same." *Turner v. Nama*, 294 Ill. App. 3d 19, 26, 689 N.E.2d 303, 308 (1997). In order to establish that either exception applies, Memorylink must show that Defendants "said or did something to lull or

induce [Memorylink] to delay the filing of [its] claim" until after the repose period ran. *Wolf v. Bueser*, 279 Ill. App. 3d 217, 228, 664 N.E.2d 197, 205 (1996) (noting the rule in the context of a statute of limitations).

The facts giving rise to Memorylink's claims regarding the '938 Patent were publicly available with the issuance of the patent in June 2003. So, in order for Memorylink to prevail, the Court must accept that Defendants' alleged failure to provide Memorylink with any information about the patent prior to that date amounted to concealment of the information thereafter. For reasons similar to those discussed above, such a holding might very well run counter to the purpose of a statute of repose, which focuses on acts or omissions rather than discovery.

However, as noted above, the Court did previously hold that the patent's issuance would not constitute constructive discovery for purposes of the statute of limitations. *Memorylink*, 2009 WL 3366974, *5 (citing *Advanced Cardiovascular Sys., Inc. v. Seimed Life Sys., Inc.*, 988 F.2d 1157, 1161-62 (Fed. Cir. 1993)). The Court ruled that the statute of limitations actually began to run when Memorylink had a duty to inquire into whether Motorola was filing an application for the '938 Patent. *Id.* The divergence in the purposes behind the two statutes might support a holding that the "duty to inquire" rule does not apply to the fraudulent concealment and equitable estoppel exceptions to the statute of repose. But, even under those exceptions, the Court must make an arguably similar inquiry into whether the facts were discoverable to a party exercising "ordinary care." *See Dancor Int'l, Ltd. v. Friedman, Goldberg & Mintz*, 288 Ill. App. 3d 666, 676, 681 N.E.2d 617, 624 (1997) (refusing to apply the fraudulent concealment statute in a case where facts giving rise to claim were publicly available).

Illinois case law makes clear that such an inquiry is unnecessary in this case, however. The fact Memorylink cannot avoid is that it filed its claim more than six years after the Defendants' last act or omission related to the '938 Patent *and* almost two years after it admittedly learned of the patent's existence in November 2007. This is because Illinois courts "have declined to apply fraudulent concealment and equitable estoppel to toll the statute of repose in cases where the claimant discovers the fraudulent concealment, or should have discovered it through ordinary diligence, and a reasonable time remains within the remaining limitations period." *Mauer*, 926 N.E.2d at 963 (internal quotation omitted). Memorylink had more than enough time to file its malpractice claims after it admittedly learned of the underlying facts. In fact, it filed another lawsuit on precisely those facts more than a year before it filed this one. While the statute of repose may sometimes appear to be a harsh rule, its application does not seem unjust in this case.

Therefore, the Court finds that the statute of repose bars Memorylink's claims regarding the '938 Patent.

## *CONCLUSION*

For the reasons above, the Court GRANTS Defendants' motion to dismiss Memorylink's malpractice claim.

IT IS SO ORDERED.

_8/5/10_
Dated

Hon. William J. Hibbler
United States District Court

11